## Tomlinson *against* Collins.

In replevin for goods attached, the plaintiff can recover only by proving himself to be the owner of them.

On the 12th of *August*, *A* caused certain goods owned by *B*, to be attached, and the officer who served the attachment, placed them in *A's* hands, as his bailee, to keep them for him. On the 22d, while these goods were thus under attachment, *C* entered into an agreement with *B*, that *C* should have the goods, if he would pay the claim of *A*; which *C* did not pay until the 28th. On the 26th, while the goods were under *A's* attachment and in his hands as

bailee, *D* attached them in a suit against *B*, without removing them from *A's* custody, and without notice to him of such attachment. Held, 1. that the agreement between *C* and *B* was upon *a condition precedent*, and no title in the goods passed to *C*, until performance by him, on the 28th ; 2. that the attachment of *D*, on the 26th, was, in the absence of fraud, a valid attachment ; the law requiring no act of notoriety to constitute an attachment of property, and nothing more than that the officer should so take it as to have it in his power or custody ; 3. that though it would have been proper for the officer serving the second attachment, to give notice thereof to *A*, the bailee of the goods, yet there is no law requiring this to be done, nor did the want of such notice, in this case, invalidate the attachment.

A constable, having attached goods in the town in which he lives, may leave a copy with the defendant in another town.

Where it was material to shew, on the trial of the cause, that the property in question was, at a certain time, holden by attachment ; and the writ which had been served, but never returned to court, was offered, with parol testimony, to prove such fact ; it was held, that the evidence was admissible for this purpose.

New-Haven,
July, 1850.

Tomlinson
*v.*
Collins.

THIS was an action of replevin, to obtain the possession of certain goods, alleged to be the property of the plaintiff, which had been taken from him, by attachment.

The defendant avowed the taking, by virtue of a writ of attachment in his favour against *Samuel Walcutt ;* alleging, that the goods, at the time of such taking, were the property of said *Walcutt,* and not of the plaintiff. Upon this plea issue was joined.

The cause was tried at *New-Haven, January* term, 1850.

On the trial, the plaintiff, for the purpose of proving title to the goods, claimed and offered evidence to prove, that on the 22d day of *August,* 1848, those goods, being then the property of *Samuel Walcutt,* were in the possession of *Abraham Hubbell,* of *Derby,* under a claim by him, as a creditor of *Walcutt ;* that they were then under an attachment in his favour against *Walcutt,* and had been placed in his custody, by the attaching officer, *David T. Stoddard,* a constable of *Derby,* to keep them for him ; that the amount of his claim was about 130 dollars ; that the plaintiff, having knowledge of these facts, and that *Walcutt* had, within a few days preceding, failed and become insolvent, they agreed with each other, at *Naugatuck,* on the 22d day of *August,* 1848, that the plaintiff should have the goods, if he would pay *Hubbell's* claim, amounting to nearly the fair value of the goods ; that on the 24th day of *August,* 1848, (*Hubbell* then being absent

from home,) the plaintiff informed *Hubbell's* wife, that he had bought said goods, and requested her to notify her husband of the same, and to direct him to feed two horses, parcel of said property and goods, with grain, at the plaintiff's expense, until the fore part of the next week, when the plaintiff would pay *Hubbell's* claim and take the property.

On the 28th day of *August*, 1848, at *Derby*, the plaintiff called on *Hubbell*, and asked him, if he, the plaintiff, could have said property, by paying his, *Hubbell's*, claim, and informed him of said agreement, and also asked him, if there were any other claims or attachments on said goods; and *Hubbell*, in reply, told the plaintiff, that he could have the goods, if he would pay said claim, and that there were not any other claims or attachments than his upon said goods, to his knowledge. And the plaintiff thereupon paid *Hubbell's* claim and costs, amounting, in full, to 134 dollars, and took a part of the goods, and left the residue with *Hubbell*, for the remainder of that day; and in the evening, while the plaintiff was removing the residue of the goods, they were taken, by said *Stoddard*, a constable, from the plaintiff, by virtue of an attachment, in favour of the defendant, against *Walcutt*.

And the plaintiff claimed, that during all this time, the goods remained in the actual possession of *Hubbell;* and that he advanced said sum of money to pay *Hubbell's* claim, solely on the faith and credit of said goods; and that *Walcutt*, at the time of such payment, was wholly insolvent.

The defendant claimed, that, at *Derby*, on the 12th day of *August*, 1848, said goods were attached, by *David T. Stoddard*, a constable of *Derby*, at the suit of *Hubbell*, against said *Walcutt*, founded on the before stated claim of *Hubbell* against *Walcutt;* and that this officer then put said goods into the possession and keeping of *Hubbell*, the creditor in said suit, to keep for him; and for the purpose of proving these facts, the defendant offered in evidence, the writ of attachment, upon which he claimed they were attached, together with the return of said constable *Stoddard* thereon endorsed, accompanied with the parol testimony of *Stoddard*, (to the facts claimed by the defendant,) and to the correctness of the return on said writ; which was made returnable to the *October* term of the superior court for *New-Haven* county, 1848; but it was never returned to said court; and

the plaintiff objected to its admission, and to all of said evidence ; but the court overruled the objection and admitted the same. The officer also testified, that he told *Hubbell*, on the last-mentioned day, not to give up said property, on any consideration, without a written order from him.

*New-Haven,*
July, 1850.

Tomlinson
*v.*
Collins.

The defendant also claimed to have proved, that on the 26th day of *August,* 1848, he caused a writ of attachment in his favour and against *Walcutt,* to be put into the hands of said officer for service ; and that, on the evening of that day, the officer went into the cellar of *Hubbell's* house, where a part of the goods were, and attached the same ; and that he also went to *Hubbell's* barn, where the residue of the goods were, and attached them ; and that the officer testified, that he thought he told *Hubbell,* that he had attached them, but did not tell him on whose writ he attached them ; but the officer repeated to *Hubbell* what he had said to him, when the same goods were first put into *Hubbell's* possession on his own attachment, not to give up the property, upon any consideration, without a written order from him, the officer ; and the officer did not remove the goods, nor place any mark on them ; and there was no person present, when he attached them on the last-mentioned writ.

The defendant also claimed to have proved, that on the 28th day of *August,* 1848, after said sum of money had been paid by the plaintiff to *Hubbell,* towards evening of that day, the plaintiff was about removing said goods out of *Hubbell's* possession, contrary to his wishes, (and against his express commands,) when the officer took said goods from the plaintiff, and left a copy of said writ of the defendant's with *Walcutt,* on the day of *September,* 1848, at the town of *Naugatuck,* and said writ was not otherwise served. And the defendant denied all the claims of the plaintiff ; and claimed, that if any such purchase was made by the plaintiff as he claimed, it was fraudulent and void.

The plaintiff also claimed to have proved, that after said property was attached by the defendant, (if it ever was so attached,) said attachment was made secretly ; that the plaintiff and *Walcutt* were wholly ignorant of it, at the time said sum of money was so paid ; and that said goods remained in the same situation, during all the time aforesaid, after the second attachment as before ; that there was no mark on said prop-

erty ; and that nothing was done, by said officer, on the 26th day of *August*, 1848, to designate that said property had been attached ; and that he did not notify *Hubbell*, in whose possession said property then was, that he had again attached said goods. And the plaintiff also denied the claims of the defendant.

The plaintiff claimed, and requested the court so to charge the jury, 1st, That if they should find, that he bought said goods on the 22d day of *August*, 1848, prior to the defendant's attachment, and left notice thereof, with said direction concerning the keeping of the same, as claimed by him, although he did not take the actual possession of said goods prior to the time when the defendant claimed to have attached them, that the property of said goods vested in the plaintiff, and that they could not, after such purchase, be taken for *Walcutt's* debt.

2d. That if the plaintiff permitted the goods to remain in the possession of *Hubbell*, who held them under a claim of right, adverse to *Walcutt*, it was not a badge of fraud, and no presumption of fraud could arise from this circumstance.

3d. That if *Hubbell* had notice of the plaintiff's purchase of the property, previous to the defendant's attachment, the plaintiff would hold the goods against the defendant.

4th. That the acts of the officer, as claimed by the defendant, on the 26th day of *August*, did not constitute an attachment of the goods ; but that (the goods being in the possession of *Hubbell*,) it was necessary for the officer to give *Hubbell* notice of such second attachment, or to remove the goods, or take them into his custody, or place some mark upon them, so that third persons might know that they were attached ; and that if the attachment was secret, it was, at least, a badge of fraud.

5th. That if the plaintiff paid his money on the faith and credit of the goods, while they remained in the actual possession of *Hubbell*, without notice to the plaintiff, *Hubbell* or *Walcutt* of the defendant's attachment, the plaintiff would hold the goods as against the defendant.

6th. That if *Hubbell*, while he had possession of the goods, relinquished them to the plaintiff, a *bona fide* purchaser, the defendant's attachment became thereby relinquished ; and that the officer and the defendant were bound by the acts

and declarations of *Hubbell* relative to the goods, while he remained in the possession of them.

*New-Haven,*
July, 1850.

Tomlinson
*v.*
Collins.

7th. That if the defendant's writ was not otherwise served than by leaving a copy thereof, with his return thereon, with *Walcutt,* at the town of *Naugatuck,* by *David T. Stoddard,* a constable of the town of *Derby,* such service was invalid, and the defendant acquired no lien upon the goods, by such attachment and service.

The court did not charge the jury in accordance with the claims of the plaintiff; but charged them, that if there was an attachment in fact of the goods, on the 12th day of *August,* 1848, at the suit of *Hubbell* against *Walcutt,* and the goods were then placed in *Hubbell's* custody, by the officer, as claimed by the defendant, and so remained until the 28th of *August;* and if the acts of the officer, on the evening of the 26th of *August,* were as claimed by the defendant; they constituted a valid attachment of the goods; that it was not necessary for the officer to remove them, or place any mark upon them, or to give *Hubbell* notice that he had again attached them with *Collins's* writ; and that, although the plaintiff might have paid his money to *Hubbell,* on the faith and credit of the goods, and at the time of such payment, neither the plaintiff, *Hubbell,* nor *Walcutt,* knew of such attachment; and the goods were then in *Hubbell's* possession and custody, and, as he, and the plaintiff, and *Walcutt* supposed, subject only to *Hubbell's* claim or attachment; yet that the acts of the officer constituted a valid attachment to hold the goods, as against the plaintiff, provided the jury should find, that neither the officer, nor the defendant, was guilty of any actual or intentional fraud in relation to such attachment.

The court also told the jury, that as by the terms of the original agreement between the plaintiff and *Walcutt,* the goods were only to become the plaintiff's, on his paying the debt of *Hubbell;* and as it was not claimed, that said debt was paid until after the attachment of the defendant; that if that was a valid attachment, it would hold the goods; that if there was no fraud in the acts of either of the parties, they should be regarded as having equal equitable rights to the property in question; and in such case, the party who first obtained the possession and perfected his lien or title, would prevail; and that the defendant was not bound, by *Hubbell's* acts or

declarations, unless he, or his officer, *Stoddard*, was privy thereto. But if there was any designed or fraudulent concealment of the defendant's attachment from the knowledge of the plaintiff, by means of which he was induced to pay his money to *Hubbell ;* and if either the defendant, or his officer *Stoddard*, was privy or consenting thereto, the defendant's attachment would thereby be rendered invalid, and the plaintiff would hold the goods.

The jury returned a verdict for the defendant ; and the plaintiff moved for a new trial.

*Munson*, in support of the motion contended,

1. That the evidence of the acts of the officer prior to the plaintiff's purchase of the goods, and the defendant's attachment of the same ; the endorsement on the writ ; and the parol evidence of the officer to the truth of the facts contained in the endorsement, were improperly admitted.

In the first place, these facts have nothing to do with the issue between the plaintiff and defendant. The issue is simply on a question of *title*, at a time subsequent. And no legal inference could arise relative to the *validity* of a *subsequent purchase*, by the plaintiff, or a *subsequent attachment*, by the defendant. The facts are *collateral*, and do not come within any of the exceptions of the rule which excludes *collateral facts*. 1 *Greenl. Ev.* 551, 2. 1 *Stark. Ev.* 52. 1300. (3d ed.)

Secondly, the evidence offered was not, in its nature, proper, to prove the facts claimed. The return of the officer is the only legitimate evidence of an attachment. It is the duty of the officer to return the writ. *Stat.* 579. *sec.* 10. *Dutton* v. *Tracy*, 4 *Conn. R.* 79. *Stark. Ev.* 995. 1002, 42, 4.

Thirdly, the writ and endorsement is not matter of *record*, until it is *returned* to court. *Stark. Ev.* 284. By the record we distinguish the official acts of the officer from the acts of the individual. The endorsement of an officer on a writ not returned, is no higher evidence of the facts contained in it than his parol declarations made out of court to the same facts. He is not liable for making a *false* endorsement ; and until the return is made, it is not a communication to the court of his official acts. The reason why credit is given to the return of an officer, is, that he is a sworn officer of the court,

to which he makes return of his official acts.   *Stark. Ev.*
285.

Fourthly, if the endorsement is *evidence*, then the parol
evidence of the officer was, at least, *superfluous*. 1 *Greenl.
Ev.* 315.   *Stark. Ev.* 995.

2. That the *title* of these goods *vested* in the plaintiff, when
the bargain was completed between him and *Walcutt*, on the
22d of *August*, prior to the defendant's attachment.

The bargain was simply this ; that the plaintiff should have
the property, and pay *Walcutt's* debt to *Hubbell*, in consid-
eration of the conveyance ; and it was then *complete* and
*valid*.   The minds of the parties met.   There was a mutual
assent and agreement of the parties to the terms of the con-
tract.   The consideration that the plaintiff was to pay the
price of the property to *Walcutt's* creditor, was a *valuable
consideration*.   *Meade* v. *Smith*, 16 *Conn. R.* 346. 358.

The contract was for a lawful purpose.   Every thing was
finished, by *Walcutt*, the vendor, that *could be*, or was to be,
done by him.   The goods were parcelled out and specified.
The terms of the sale were agreed on.   The bargain was ab-
solute and complete, and the *right* and *risk* of the property
was in the plaintiff.   2 *Kent*, 492. note 2.   2 *Black. Com.*
448.   *Meade* v. *Smith*, 16 *Conn. R.* 358.

It is no objection to the validity of this transfer, that the
property was then in the adverse possession of *Hubbell*, a
third person.   2 *Kent's Com.* 492. note (*b.*)   The sale was
a sale of *Walcutt's* right, subject to *Hubbell's* lien.

If the transaction was *bona fide*, and the plaintiff was guilty
of no laches in taking possession of the property, and in per-
forming his part of the contract, his rights and title could not
be defeated, by any subsequent act of *Walcutt's* creditors.
*Ingraham* v. *Wheeler*, 6 *Conn. R.* 277.   *Meade* v. *Smith*, 16
*Conn. R.* 358.   And there is nothing in the circumstances of
this transaction, that can raise a presumption of fraud, or shew
any want of diligence on the part of the plaintiff.

3. That at the time this bargain was made, the possession
was not in *Walcutt* ; and when the bargain was struck, his
title had passed to the plaintiff.   What interest then could his
creditors acquire, by attaching *that* in which he had *no inter-
est ?*

4. That the plaintiff carried out his contract, and paid his

money, in *good faith,* solely on the credit of this property; and why should the defendant reap the benefit, when otherwise he would have had nothing? But by the charge and ruling of the court, *all* of these considerations were *withheld* from the jury; and the terms of the contract were, by the court, assumed to be such, that although it was *bona fide*, and the whole transaction was free from fraud, and the plaintiff was guilty of no laches, and the plaintiff paid his money on the credit of the goods, in good faith; yet if the defendant's attachment was made prior to the actual payment of the money, by the plaintiff, the defendant would hold the same.

5. That the defendant's attachment was constructively fraudulent; and the jury should have been so instructed. It was made in secret, and kept in secret, until after the money had been *drawn out* of the plaintiff. Secrecy is always a badge of fraud. 1 *Sw. Dig.* 275. No matter if it was not designed to be secret or fraudulent, the effect is the same on third persons. The possession was never taken and held, by the officer, under the defendant's attachment. *Burrows* v. *Stoddard,* 3 *Conn. R.* 164. *Hollister* v. *Goodale,* 8 *Conn. R.* 334.

The possession of *Hubbell,* without notice, is not the possession of the officer. There is no privity of contract or possession between them, as to the defendant's attachment. *Ingraham* v. *Wheeler,* 6 *Conn. R.* 279.

Prior to the defendant's attachment, this property was *Wallcutt's,* subject only to *Hubbell's* lien; and by *Hubbell's* consent, without the consent of the officer, *Walcutt* could make an absolute and valid transfer of this property. *Felker* v. *Emerson,* 17 *Verm.* 101. *Collins* v. *Smith,* 16 *Verm.* 9.

So far as third persons are concerned, it is the same as though the property attached had been left in the hands of the original owner. *Taintor* v. *Williams,* 7 *Conn. R.* 271. *Waterhouse* v. *Smith,* 9 *Shep.* 337. *Burroughs* v. *Wright,* 19 *Verm.* 510. Possession of property after an attachment or sale, is made constructively fraudulent, because it is deemed to operate as a fraud on third persons.

The plaintiff stands on higher ground than an attaching creditor, who has not parted with his money and the credit of the property. *Thompson* v. *Rose,* 16 *Conn. R.* 71.

6. That the lien of the defendant, by virtue of his attach-

ment, was terminated and lost, by *Hubbell's* giving up the property to the plaintiff, after he had paid *Hubbell's* claim, on the 28th of *August.* *Taintor* v. *Williams,* 7 *Conn. R.* 271. *Carrington* v. *Smith,* 8 *Pick.* 419. *Bagly* v. *White,* 4 *Pick.* 395. *Knapp* v. *Sprague,* 9 *Mass. R.* 258.

7. That the attachment was never perfected. In order to perfect an attachment the defendant must be summoned ; he must be officially informed of the suit, by a copy of the writ, attested by a proper officer. The service of a writ, by a constable, is limited to his own town. *Stat.* 143. *sect.* 38. The leaving of the copy is an official act ; it is *the service* of the writ. The fact that the property was attached within the officer's precincts, gave him no power to go beyond his precincts to make service on the person. An officer can not enlarge his precincts, or derive a new power, by his own acts.

*Wooster,* contra, contended, 1. That the writ offered in evidence, accompanied by the testimony of the officer, was properly admitted. All that it was necessary to prove, was, that there was *an attachment in fact.* The defendant claimed nothing, by virtue of the *legality* of the attachment. He simply claimed to show, that the property was under the controul of the officer. To prove this fact, the officer was introduced as a witness, and the writ was produced by him, as a mere *memorandum* of the transaction, made at the time, and sworn to by him, as tending to show an attachment in fact. The writ was not introduced as *record* evidence ; nor was the effect of such evidence claimed from it. Did it not tend to prove the matter in issue—an attachment in fact? All evidence that shall tend to prove the issue, if offered in legal form, is admissible. 1 *Greenl. Ev.* § 51, 2. Of this the plaintiff cannot complain ; as it tended to prove nothing but what he claimed to prove, for the purpose of showing his title.

2. That by the bargain, as claimed by the plaintiff, between him and *Walcutt,* the payment of *Walcutt's* debt to *Hubbell* was a condition precedent to his obtaining any title to the property in question ; and as such debt was not paid to *Hubbell* until the 28th day of *August,* no title could, by the terms of the agreement, vest in the plaintiff until that time. A condition precedent must be performed, before he whose duty it

*New-Haven,*
*July, 1850.*

Tomlinson
*v.*
Collins.

money, in *good faith,* solely on the credit of this property; and why should the defendant reap the benefit, when otherwise he would have had nothing? But by the charge and ruling of the court, *all* of these considerations were *withheld* from the jury; and the terms of the contract were, by the court, assumed to be such, that although it was *bona fide,* and the whole transaction was free from fraud, and the plaintiff was guilty of no laches, and the plaintiff paid his money on the credit of the goods, in good faith; yet if the defendant's attachment was made prior to the actual payment of the money, by the plaintiff, the defendant would hold the same.

5. That the defendant's attachment was constructively fraudulent; and the jury should have been so instructed. It was made in secret, and kept in secret, until after the money had been *drawn out* of the plaintiff. Secrecy is always a badge of fraud. 1 *Sw. Dig.* 275. No matter if it was not designed to be secret or fraudulent, the effect is the same on third persons. The possession was never taken and held, by the officer, under the defendant's attachment. *Burrows* v. *Stoddard,* 3 *Conn. R.* 164. *Hollister* v. *Goodale,* 8 *Conn. R.* 334.

The possession of *Hubbell,* without notice, is not the possession of the officer. There is no privity of contract or possession between them, as to the defendant's attachment. *Ingraham* v. *Wheeler,* 6 *Conn. R.* 279.

Prior to the defendant's attachment, this property was *Wallcutt's,* subject only to *Hubbell's* lien; and by *Hubbell's* consent, without the consent of the officer, *Walcutt* could make an absolute and valid transfer of this property. *Felker* v. *Emerson,* 17 *Verm.* 101. *Collins* v. *Smith,* 16 *Verm.* 9.

So far as third persons are concerned, it is the same as though the property attached had been left in the hands of the original owner. *Taintor* v. *Williams,* 7 *Conn. R.* 271. *Waterhouse* v. *Smith,* 9 *Shep.* 337. *Burroughs* v. *Wright,* 19 *Verm.* 510. Possession of property after an attachment or sale, is made constructively fraudulent, because it is deemed to operate as a fraud on third persons.

The plaintiff stands on higher ground than an attaching creditor, who has not parted with his money and the credit of the property. *Thompson* v. *Rose,* 16 *Conn. R.* 71.

6. That the lien of the defendant, by virtue of his attach-

*New-Haven,*
July, 1850.

Tomlinson
*v.*
Collins.

ment, was terminated and lost, by *Hubbell's* giving up the property to the plaintiff, after he had paid *Hubbell's* claim, on the 28th of *August.* *Taintor* v. *Williams,* 7 *Conn. R.* 271. *Carrington* v. *Smith,* 8 *Pick.* 419. *Bagly* v. *White,* 4 *Pick.* 395. *Knapp* v. *Sprague,* 9 *Mass. R.* 258.

7. That the attachment was never perfected. In order to perfect an attachment the defendant must be summoned; he must be officially informed of the suit, by a copy of the writ, attested by a proper officer. The service of a writ, by a constable, is limited to his own town. *Stat.* 143. *sect.* 38. The leaving of the copy is an official act; it is *the service* of the writ. The fact that the property was attached within the officer's precincts, gave him no power to go beyond his precincts to make service on the person. An officer can not enlarge his precincts, or derive a new power, by his own acts.

*Wooster,* contra, contended, 1. That the writ offered in evidence, accompanied by the testimony of the officer, was properly admitted. All that it was necessary to prove, was, that there was *an attachment in fact.* The defendant claimed nothing, by virtue of the *legality* of the attachment. He simply claimed to show, that the property was under the controul of the officer. To prove this fact, the officer was introduced as a witness, and the writ was produced by him, as a mere *memorandum* of the transaction, made at the time, and sworn to by him, as tending to show an attachment in fact. The writ was not introduced as *record* evidence; nor was the effect of such evidence claimed from it. Did it not tend to prove the matter in issue—an attachment in fact? All evidence that shall tend to prove the issue, if offered in legal form, is admissible. 1 *Greenl. Ev.* § 51, 2. Of this the plaintiff cannot complain; as it tended to prove nothing but what he claimed to prove, for the purpose of showing his title.

2. That by the bargain, as claimed by the plaintiff, between him and *Walcutt,* the payment of *Walcutt's* debt to *Hubbell* was a condition precedent to his obtaining any title to the property in question; and as such debt was not paid to *Hubbell* until the 28th day of *August,* no title could, by the terms of the agreement, vest in the plaintiff until that time. A condition precedent must be performed, before he whose duty it

is to perform it, can claim any title or benefit by the contract to which it is annexed. 1 *Sw. Dig.* 195. 2 *Smith's Lead. Ca.* 8.

3. That had the plaintiff's contract been such with *Wall-cutt*, on the 22d of *August*, as by its terms to have vested its title in the plaintiff; yet the leaving of the property in the possession of *Hubbell*, the bailee of the officer, until the 28th of *August*, *Walcutt* being notoriously insolvent, was such a badge of fraud as to render the sale to the plaintiff *prima facie* fraudulent, and, unexplained, conclusively so. No explanation was offered. 1 *Sw. Dig.* 267, 8. *Osborne* v. *Tuller*, 14 *Conn. R.* 529. *Carter* v. *Watkins, Id.* 240.

4. That the possession of *Hubbell* was the possession of the officer; and the goods were as much subject to a second attachment, as though they had remained in the actual possession of the officer; nor would notice to *Hubbell* of the pretended purchase of the plaintiff, affect the right of attaching creditors, so long as *Hubbell* was acting as bailee and agent of the officer, and not of the plaintiff. It does not appear, that *Hubbell* ever received such notice, as was claimed to have been left with his wife. The wife is bound by no rule of law to communicate to her husband; and no presumption can be drawn, that, in this case, she did so.

5. That had such notice been received by *Hubbell*, it would not have any effect in giving title. It would not be a payment; it would not be a taking of possession; it would not constitute a delivery; nor would it make *Hubbell* his agent.

6. That the goods, being, on the 26th of *August*, in the custody and possession of the officer *Stoddard*, by his bailee *Hubbell*, it was not necessary that there should be a removal or marking of the goods. All that is necessary to constitute an attachment, is, that the property be under the controul of the officer, by virtue of legal process. *Hubbell's* possession was the possession of the officer; and no removal or mark could bring the goods more under the controul of the officer. *Hollister* v. *Goodale*, 8 *Conn. R.* 334. *Turner* v. *Austin*, 16 *Mass. R.* 181.

7. That *Hubbell*, being a bailee and agent of the officer to keep merely, and expressly forbidden to give up the goods to any one, without an order from the officer, could not so relinquish them, as that the defendant, or the officer, would

be bound by his act. It would not be within the scope of his authority.

8. That an officer may go beyond his precincts to leave a copy with the defendant, when he has made an attachment of goods within his precincts. When an officer legally commences a service, he has power to complete it.

CHURCH, Ch. J. This being an action of replevin for goods attached, the plaintiff can recover only by proving himself to be the owner of them. *Brown* v. *The Chicopee Falls Co.*, 16 *Conn. R.* 87.

The first and most material question arising here, is, whether the legal title to the property in controversy vested in the plaintiff, before it was attached by the officer, on the second writ of attachment. *Walcutt* was the owner of the goods, and the contract between him and the plaintiff, made on the 22d day of *August*, 1848, was, that the plaintiff should have them, if *he would pay* the claim of *Hubbell*, who then had them under attachment. This was a contract of sale, upon a condition precedent. It was not, that he should have them, *upon his promise* to pay *Hubbell*, at some future time ; but if he paid in fact—which was equivalent to saying, *upon his paying*, or *when he paid*. 1 *Sw. Dig.* 195.

No title, therefore, vested in the plaintiff, on the 22d day of *August*, as he did not pay *Hubbell's* claim until the 28th of that month. It is important, of course, to determine whether, in the mean time, on the 26th day of *August*, they were attached and legally holden, by the defendant, as he claimed. For if so, this action can not be sustained.

As to this, it appears, that *Hubbell*, a creditor of *Walcutt*, had attached the property in question, on a suit in his favour against *Walcutt*, on the 12th day of *August ;* the writ in that suit was served, by *Stoddard*, a constable of *Derby*, who placed the goods attached by him in the hands of *Hubbell*, as his bailee, to keep them for him, and not to be given up, without a written order. And the defendant claimed, that, while *Hubbell* was thus holding them, he caused them to be attached on a suit in his favour against *Walcutt*, by a writ, served by the same officer, *Stoddard*, on the 26th day of *August*, two days before the plaintiff paid up the claim of

*Hubbell* upon them, under his contract with *Walcutt.* The goods were attached in fact, but without a removal of them from *Hubbell's* custody, and without any notice given to him. Was this a valid attachment ? We think it was ; and that the charge of the judge on this point was correct.

It was as competent for the attaching officer to make *Hubbell,* the creditor, his bailee to hold the property attached for him, as to have placed it in the custody of any other person ; and while he was thus holding it, it was, in legal effect, continuing in the care and custody of the officer, or in custody of the law. The same or any other officer could again have attached it, while in this situation. If it had been attached the second time, by a different officer, he would have had no right to take it away from the custody of the first one ; and as it was attached by the same officer, there can be no reason why he should have removed it from the possession of his own bailee, to whose custody he might have remanded it the next moment.

The law requires no act of notoriety to constitute an attachment of property. Nothing more is necessary than that the officer should so take it as to have it in his power or custody. Perhaps, in the present case, the delivery of the second writ of attachment to the first attaching officer, with directions to attach these goods, was, of itself, a sufficient attachment of them. But, here was more than this ; the officer attached them in fact, not constructively, and they remained in the same custody under both attachments, until *Hubbell's* first attachment was settled, on the 28th day of *August.* The officer had given no written order to *Hubbell,* nor had he done any other act relinquishing his legal custody of the goods. *Hollister* v. *Goodale,* 8 *Conn. R.* 332. *Turner* v. *Austin,* 16 *Mass. R.* 181. *Widgery* v. *Haskell,* 5 *Mass. R.* 157. *Denny* v. *Warren,* 16 *Mass. R.* 420. *Lyon* v. *Rood,* 12 *Verm. R.* 233.

It would have been very proper, and indeed to have been expected of the officer, to have notified *Hubbell,* his bailee, that the property was again attached ; but we know of no law requiring this, and can not say, that the attachment was invalid, for want of such notice. So far as this might have conduced to prove a fraudulent attachment, the plaintiff has

had the benefit of it, upon the question of fraud made at the trial.

The defendant's writ of attachment was served, by *Stoddard*, a constable of *Derby*. He attached the property situated in *Derby*, in that town; but inasmuch as the defendant *Walcutt* resided in the town of *Naugatuck*, the attaching officer left his copy with the defendant in *Naugatuck*, describing the property attached; and for this cause, the attachment is objected to, as invalid.

Where there is but one defendant, the service of process upon him is but an entire act, the performance of but one entire duty, and can be performed only, by one officer. We know of no law or practice authorizing one officer to commence such a service, and giving power to another, to complete it. If a writ of attachment against property is issued, the taking or attaching of it, is the first and principal step in the process of service; and the officer thus commencing the service, must finish it, by leaving his copy and returning his writ, setting forth his whole proceeding under it; and this, in the present case, he could not do, without going into the town of *Naugatuck*.

On the trial, the defendant offered in evidence the first writ of attachment in favour of *Hubbell* against *Walcutt*, with the officer's return of service indorsed upon it, accompanied by the testimony of *Stoddard*, the officer. This was objected to, because the writ had not been returned to court, and the suit had been discontinued. If the object had been to make claim under the attachment, this objection might well enough have been made; but it was only to show what was the situation of the property, when the last writ was served—that it was then in custody of the law, and under the controul, and in the legal possession, of the officer, when the defendant's writ of attachment was levied upon it; and for this purpose, this evidence was admissible.

We sustain the judge at the circuit, in his charge, and in the admission of the evidence objected to.

In this opinion the other judges concurred.

New trial not to be granted.