93 U.S. 664
 23 L.Ed. 1003
 HERVEY ET AL.
v.
RHODE ISLAND LOCOMOTIVE WORKS.
 October Term, 1876
 
 1
 The courts look to the purpose of the parties; and, if that purpose be to give the vendor a lien on the property until payment in full of the purchase-money, it is liable to be defeated by creditors of the vendee who is in possession of it.
 
 
 2
 ERROR to the Circuit Court of the United States for the Southern District of Illinois.
 
 
 3
 On the twenty-first day of August, 1871, the Rhode Island Locomotive Works entered into a contract with J. Edwin Conant & Co., as follows:——
 
 
 4
 'This agreement, made this twenty-first day of August, 1871, by and between the Rhode Island Locomotive Works of Providence, R. I., party of the first part, and J. Edwin Conant & Co., contractors for the Chicago & Illinois Southern Railroad Co., party of the second part, witnesseth:
 
 
 5
 'That whereas the said party of the first part is the owner of one locomotive-engine and tender complete, named Alfred N. Smyer, No. 3; and whereas the said party of the second part is desirous of using and eventually purchasing the same: now, therefore, in consideration of the sum of one dollar to the said party of the first part by the said party of the second part in hand paid, the receipt whereof is hereby acknowledged, and in consideration of the covenants and agreements hereinafter contained, the said party of the first part agrees to let and lease, and hereby does let and lease, to the said party of the second part, and the said party of the second part ag ees to have and take from the said party of the first part, the said one locomotive-engine and tender, with the right to place the same upon its railroad, and to use the same in the usual manner in transacting the business of the said railroad; and in consideration thereof the said party of the second part hereby covenants and agrees to pay to the said party of the first part for the use and rent of the same the sum of $12,093.96 in notes, as follows:——
 
 10% cash......................... $1,150.00
 
 6
 One note due Feb. 24, 1872........ 3,580.16
 
 
 7
 One note due May 24, 1872......... 3,647.90
 
 
 8
 One note due Aug. 24, 1872........ 3,715.90
 
 
 9
 ---------
 
 
 10
 $12,093.96
 
 
 11
 'And the said party of the second part hereby further covenants and agrees, during the time hereby demised, to keep and maintain the said one locomotive-engine and tender in as good condition as it now is, reasonable and ordinary wear and tear excepted; but it is understood and agreed, that any injury by collision, by running off the track, or by fire, or by destruction from any cause, is not to be considered reasonable and ordinary wear and tear.
 
 
 12
 'And the said party of the first part, in consideration of the foregoing, further covenants and agrees, that in case said party of the second part shall pay the said notes promptly, as hereinbefore set forth, upon payment of the last-mentioned note, viz., $3,715.90, and all renewals of same, it will grant, sell, assign, transfer, and convey to the said party of the second part the said one locomotive-engine and tender in the condition it then is, to have and to hold the same to the said party of the second part, its legal representatives, successors, and assigns for ever. And the said party of the second part further covenants and agrees, that if it shall fail to make any of the said payments when due, then the said party of the first part shall be at liberty, and it shall be lawful for it, to enter upon and take possession of the said one locomotive-engine and tender, and to that end to enter upon the road and other property of said party of the second part.
 
 
 13
 'And the said party of the second part further covenants and agrees, that, in case of any default on its part in any of the payments, as hereinbefore provided, it will, within thirty days thereafter, deliver the said one locomotive-engine and tender to the said party of the first part.
 
 
 14
 'And the said party of the first part shall thereafter, upon thirty days' written notice to the said party of the second part of the times and place of sale, proceed to sell the said one locomotive-engine and tender, and shall apply the proceeds of such sales, first, to the payment of the expenses of the sale; second, to the payment of any balance then due, or thereafter to become due, for or on account of the rent, as hereinbefore provided; and, if after these payments there shall remain any balance of the proceeds of the sale, the same shall be paid to the said party of the second part.
 
 
 15
 'And the said party of the second part further covenants and agrees, that they will not in any way exercise or claim the right to release, incumber, or in any way dispose of said one locomotive-engine and tender, or employ them during the term of this lease in any other way than in the service of J. Edwin Conant & Co., contractors for the Chicago & Illinois Southern Railroad Company, or in any way or manner interfere with the said party of the first part in repossessing and retaking said one locomotive-engine and tender, should default be made in any of the hereinbefore provided for payments, but the full legal right and title of said one locomotive-engine and tender shall and does remain in the Rhode Island Locomotive Works, as fully, to all intents and purposes, as though the lease had not been made.
 
 
 16
 'And the said party of the first part hereby covenants and agrees, that if the said party of the second part shall and do well and truly make each of the payments aforesaid at the times hereinbefore specified, without any let or hindrance or delay whatever as to any or either of said payments, that upon the last-mentioned payment, viz., $3,715.90, and all renewals being made, as well as each and all of the other said payments, the said party of the first part will and shall convey the said one locomotive-engine and tender to the said party of the second part, and give them a full acquittance for the same, and that the title thereto shall ipso facto, by the completion of such payment, vest in the said J. Edwin Conant & Co., contractors for the Chicago & Illinois Southern Railroad Company.
 
 
 17
 'In witness whereof, the parties hereto have hereunto set the corporate seal, by the respective officers duly authorized.
 
 
 18
 'RHODE ISLAND LOCOMOTIVE WORKS.
 
 
 19
 'EDW. P. MASON, Treasurer.
 
 
 20
 'J. EDWIN CONANT & Co., Contractors C. & Ill. So. R.R.'
 
 SEAL RHODE ISLAND
 
 21
 LOCOMOTIVE WORKS, PROVIDENCE, R. I.
 
 
 22
 Which agreement was indorsed as follows:——
 
 
 23
 'STATE OF ILLINOIS, CUMBERLAND COUNTY:——
 
 
 24
 'I hereby certify that the within instrument was filed in this office for record on the twenty-eighth day of January, 1873, at two o'clock P.M., and duly recorded in book D of mortgages, page 485, and examined.
 
 
 25
 'ANDREW CARSON,
 
 
 26
 'Clerk and Ex-Officio Recorder.'
 
 
 27
 It was admitted that the agreement was executed at its place of business, in Rhode Island, by the Rhode Island Locomotive Works, and in New York by Conant & Co., where they resided; that Conant & Co. paid no part of the principal of the purchase-money, except the amount admitted on the face of the agreement; and that they obtained possession of said engine and its tender under said agreement, and took it to Illinois.
 
 
 28
 On the 28th of October, 1871, by virtue of a writ of attachment issued out of the Court of Common Pleas of Coles County, Illinois, in an action of assumpsit wherein Conant & Co. were defendants, the sheriff seized the Smyser as their property, and sold it to the plaintiff in error, Hervey.
 
 
 29
 On the 29th January, 1873, the marshal of the United States for the southern district of Illinois took possession of the Smyser under a writ of replevin sued out of the Circuit Court of the United States for that district by the Rhode Island Locomotive Works against Hervey, and the Paris and Decatur Railroad Company.
 
 
 30
 At the trial, the court below found a special verdict as follows:——
 
 
 31
 That the lease offered in evidence by plaintiff was a subsisting executory contract between the parties thereto.
 
 
 32
 That the plaintiff had not parted with the legal possession of the locomotive in controversy.
 
 
 33
 That the plaintiff had never received payment for the locomotive in controversy other or further than as stated in the face of their lease.
 
 
 34
 That the plaintiff delivered to Conant & Co. the said locomotive to be used by them in Illinois, and that said locomotive was so used in that State.
 
 
 35
 That the possession of Conant & Co. was the possession of the plaintiff.
 
 
 36
 That the defendant obtained possession of the locomotive in controversy in due form of law, under execution, levy, and sale, in pursuance of a valid judgment obtained in a court of competent jurisdiction, after due service upon the parties thereto in a suit against Conant & Co.
 
 
 37
 That a sale under said execution was, by an officer duly authorized thereto, made to the defendant, Robert G. Hervey, and that payment was made, in the full amount bid at said sale, by said Hervey to said officer, and that the said officer delivered the said locomotive to said Hervey.
 
 
 38
 That, subsequent to such sale and delivery by said officer to said Hervey, plaintiffs placed upon record, in the proper recorder's office in the county of Coles, in the State of Illinois, where the said property was held, the said lease, in the chattel-mortgage records in said county.
 
 
 39
 That such recording of said lease was more than one year subsequent to the sale of said locomotive under said execution and levy.
 
 
 40
 That said sale by said officer to said Hervey was under a special execution, as shown by the public records of said Coles County.
 
 
 41
 Wherefore the court found for the pl intiff, and gave judgment accordingly.
 
 
 42
 The defendants thereupon brought the case here.
 
 
 43
 Mr. Robert G. Ingersoll, for the plaintiffs in error.
 
 
 44
 1. The contract between the defendant in error and Conant & Co. is subject to the laws of Illinois. An agreement that the vendor of personal property shall, after possession is delivered to the vendee, retain the ownership until the payment of the purchase-money, is void as to the creditors of the vendee. McCormick v. Hadden, 37 Ill. 370; Ketchum v. Watson, 24 id. 591. Thompson v. Yeck, 21 id. 73; Murch v. Wright, 46 id. 487.
 
 
 45
 2. The lien of the vendor can only be preserved by his compliance with the Chattel-Mortgage Act.
 
 
 46
 Mr. H. S. Greene and Mr. D. T. Littler, contra.
 
 
 47
 The Chattel-Mortgage Act has nothing whatever to do with the case. The portions of that act which require the recording of the instrument within less than five years refer solely to cases in which a party, having once been the owner of chattels, seeks to sell or pledge them and yet retain possession.
 
 
 48
 The only statutory provisions which relate to cases like this are directly against the position assumed by plaintiff in error.
 
 
 49
 They are found in the Statute of Frauds, and are intended to cover cases in which possession of chattels has been delivered to one who never had the title, while the ownership remains in another. Peters v. Smith, 42 Ill. 416.
 
 
 50
 Defendant in error resided in Rhode Island; Conant & Co. in New York. The construction and effect of the contract depended on the laws of those States, as it was made there. If they, when applied to the contract, did not vest the title in Conant & Co., but held them to be mere bailees, that relation followed them to Illinois, unless some positive provision of local law changed their status. Black v. Zacharie, 3 How. 483.
 
 
 51
 There was no rule of Illinois law which operated to divest the title of defendant in error. In fact, the question at issue is one of commercial law. Such contracts are almost universal in this country.
 
 
 52
 An examination of Murch v. Wright, 46 Ill. 488, relied upon by the other side, will show that the rule contended for was not a settled one in Illinois. The very cases cited by the court show that there was not a full consideration of the question. In one of them,—Jennings v. Sage, 13 Ill. 613,—the court makes the very distinction for which we now contend. It says, 'This was a case of fraudulent sale, of possession obtained fraudulently, in a case where the vendor intended to have the title pass with the possession. It was not a conditional sale where possession is given but title is not intended to pass with possession. It is insisted that as between plaintiff and Jennings, the law is that as between them, both parties being innocent, the loss should fall on the owners who, by intrusting Van Valin with the possession, enabled him to commit a fraud. This is unquestionably the law where owners with the intention of sale have voluntarily parted with possession. But this principle does not apply to sales on condition, and where the original owners have never consented to the transfer of the property.'
 
 
 53
 Bundage v. Camp, 21 Ill. 330, is also relied upon in Murch v. Wright, as authority for the conclusion there reached. Yet in that case the court say, 'This is a case where the plaintiff, with the intention of selling, or changing the title, parted with the possession, relying on the vendee to give a second note at a future day, and is like in its principle to the case of 13 id. 613.'
 
 
 54
 In McCormick v. Hadden, 37 Ill. 370, horses had been sold by one brother to another, with the agreement that a chattel mortgage should be made by the latter for the purchase-money. The mortgage was not made. The vendee, after the lapse of a year, mortgaged the horses to a third party. The very fact that he was to execute a mortgage was evidence that the title was intended to pass to him from the begin ing; and it might well be held that the vendor, by not taking a mortgage for such a length of time, had waived the condition, and looked to the credit of the vendee for the purchase-money.
 
 
 55
 Ketchum v. Watson, 24 Ill. 591, does not support the doctrine of Murch v. Wright. An absolute sale was there made with delivery. The purchaser could not pay, so a resale was made, but not a redelivery. The property, as to third parties, was held to remain in the first purchaser.
 
 
 56
 It is thus shown that the rule was not settled in Illinois at the time when this agreement was made; for Murch v. Wright, ill considered as it was, and in conflict with the very cases relied upon to support it, cannot be regarded as settling the law. It requires something more than this to change the relations of parties lawfully created in other States. The defendant in error, residing in Rhode Island, cannot be held guilty of violating the policy of Illinois, with respect to a mere rule of commercial law. This court, while paying all respect to State courts as to matters peculiarly within their jurisdiction, will settle the principles of the common law and of the law of commerce for itself. As to the effect of the conditional sale being as we contend, the weight of authority is overwhelming.
 
 
 57
 Chancellor Kent says, vol. ii. p. 497, 'When there is a condition precedent attached to a contract of sale and delivery, the property does not vest in the vendee on delivery until he perform the condition.'
 
 
 58
 Hilliard on Sales lays down the same rule, vol. iii. sect. 2.
 
 
 59
 It is admitted by the Supreme Court of Illinois that such an agreement is good between the parties. The authorities are quite as numerous that it is good against everybody. Patton v. McCave, 15 B. Mon. (Ky.) 555; Tomlinsons v. Collins, 20 Conn. 364, 2 Pick. (Mass.) 512, and 4 id. 449; Reed v. Upton, 9 id. 156; Haven v. Emory, 33 N. H. 66; Sargeant v. Gile, 8 id. 325; Porter v. Pettingall, 12 id. 299; Buckmaster v. Smith, 22 Vt. 203; armington v. Smith, 22 Vt. 203; Armington v. Taylor, 2 Hill (N. Y.) 326; Little v. Page, 44 Mo. 412; Forbes v. Marsh, 15 Conn. 384; Ballard v. Boguett, 47 Barb. 648; Whitney v. Eaton, 15 Gray (Mass.) 225; Bucher v. Hall, 15 Iowa, 277; Humble v. Ackly, 12 id. 27; 1 Parsons on Contracts, 441; Story on Sales, sect. 313; Sambling v. Read, 1 Miss. 281; Copeland v. Barrett, 4 Wash. 594; Gayler v. Dyer, 5 Cranch, C. C. 461; In re Lyon, 4 Chicago Legal News, 421.
 
 
 60
 MR. JUSTICE DAVIS delivered the opinion of the court.
 
 
 61
 It was decided by this court, in Green v. Van Buskirk, 5 Wall. 307, 7 id. 139, that the liability of property to be sold under legal process, issuing from the courts of the State where it is situated, must be determined by the law there, rather than that of the jurisdiction where the owner lives. These decisions rest on the ground that every State has the right to regulate the transfer of property within its limits, and that whoever sends property to it impliedly submits to the regulations concerning its transfer in force there, although a different rule of transfer prevails in the jurisdiction where he resides. He has no absolute right to have the transfer of property, lawful in that jurisdiction, respected in the courts of the State where it is found, and it is only on a principle of comity that it is ever allowed. But this principle yields when the laws and policy of the latter State conflict with those of the former.
 
 
 62
 The policy of the law in Illinois will not permit the owner of personal property to sell it, either absolutely or conditionally, and still continue in possession of it. Possession is one of the strongest evidences of title to this class of property, and cannot be rightfully separated from the title, except in the manner pointed out by statute. The courts of Illinois say that to suffer without notice to the world the real owners ip to be in one person, and the ostensible ownership in another, gives a false credit to the latter, and in this way works an injury to third persons. Accordingly, the actual owner of personal property creating an interest in another, to whom it is delivered, if desirous of preserving a lien on it, must comply with the provisions of the Chattel-Mortgage Act. R. S. Ill. 1874, 711, 712. It requires that the instrument of conveyance, if it have the effect to preserve a mortgage or lien on the property, must be recorded, whether the party to it be a resident or non-resident of the State. If this be not done, the instrument, so far as third persons are concerned, has no validity.
 
 
 63
 Secret liens which treat the vendor of personal property, who has delivered possession of it to the purchaser, as the owner until the payment of the purchase-money, cannot be maintained in Illinois. They are held to be constructively fraudulent as to creditors, and the property, so far as their rights are concerned, is considered as belonging to the purchaser holding the possession. McCormick v. Hadden, 37 Ill. 370; Ketchum v. Watson, 24 id. 591. Nor is the transaction changed by the agreement assuming the form of a lease. In determining the real character of a contract, courts will always look to its purpose, rather than to the name given to it by the parties. If that purpose be to give the vendor a lien on the property until payment in full of the purchase-money, it is liable to be defeated by creditors of the purchaser who is in possession of it. This was held in Murch v. Wright, 46 id. 488. In that case the purchaser took from the seller a piano at the price of $700. He paid $50 down, which was called rent for the first month, and agreed to pay, as rent, $50 each month, until the whole amount should be paid, when he was to own the piano. The court held, 'that it was a mere subterfuge to call this transaction a lease,' and that it was a conditional sale, with the right of rescission on the part of the vendor, in case the purchaser should fail in payment of his instalments,—a contract legal and valid as between the parties, but subjecting the vendor to lose his lien in case the property, while in possession of the purchaser, should be levied upon by his creditors. That case and the one at bar are alike in all essential particulars.
 
 
 64
 The engine Smyser, the only subject of controversy in this suit, was sold on condition that each and all of the instalments should be regularly paid, with a right of rescission on the part of the vendor in case of default in any of the specified payments.
 
 
 65
 It is true the instrument of conveyance purports to be a lease, and the sums stipulated to be paid are for rent; but this form was used to cover the real transaction, as much so as was the rent of the piano in Murch v. Wright, supra. There the price of the piano was to be paid in thirteen months, and here, that of the engine, $12,093.96, in one year. It was evidently not the intention that this large sum should be paid as rent for the mere use of the engine for one year. If so, why agree to sell and convey the full title on the payment of the last instalment? In both cases, the stipulated price of the property was to be paid in short instalments, and no words employed by the parties can have the effect of changing the true nature of the contracts. (In the case at bar the agreement contemplated that the engine should be removed to the State of Illinois, and used by Conant & Co., in the prosecution of their business as constructors of a railroad. It was accordingly taken there and put to the use for which it was purchased; but while in the possession of Conant & Co., who exercised complete ownership over it, it was seized and sold, in the local courts of Illinois, as their property.) These proceedings were valid in the jurisdiction where they took place, and must be respected by the Federal tribunals.
 
 
 66
 The Rhode Island Locomotive Works took the risk of losing its lien in case the property, while in the possession of Conant & Co., should be levied on by their creditors, and it cannot complain, as the laws of Illinois pointed out a way to preserve and perfect its lien.
 
 
 67
 By stipulation the judgment of the court below is affirmed as to the locomotive Olney, No. 1.
 
 
 68
 As to the locomotive and tender called Alfred N. Smyser, No. 3,
 
 
 69
 Judgment reversed.
 
 
 70
 NOTE.—Indianapolis, Bloomington, and Western Railway Company v. Rhode Island Locomotive Works, error to the Circuit Court of the United States for the Southern District of Illinois, was argued by the counsel who appeared in the preceding case. For the reasons there given, the judgment was reversed.