## NEW ENGLAND MUT. LIFE INS. CO. v. SPENCE et al.

### No. 320.

Circuit Court of Appeals, Second Circuit.
June 12, 1939.

CLARK, Circuit Judge, dissenting.

666

Gibbons, Pottle & Pottle, of Buffalo, N. Y. (Frank Gibbons, of Buffalo, N. Y., of counsel), for appellant White, as administrator of Slade.

Francis T. Findlay, of Niagara Falls, N. Y. (Bernard Sax, of Niagara Falls, N. Y., of counsel), for appellee Spence.

Before L. HAND, CLARK, and PATTERSON, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal from a decree in a suit of interpleader to determine which of two claimants was entitled to the proceeds of a life insurance policy. The plaintiff insured the life of one, Slade, for $3,500, payable to Slade's wife, now the appellee Spence. The couple then lived in Buffalo, and the contract was made either there or in Boston, the plaintiff's home office, where the policy was payable. The Slades moved to Texas, where they became domiciled, and where they were divorced upon the petition of the appellee, Spence. She then came back to Buffalo, where in turn she became domiciled and married Spence; Slade stayed in Texas and also remarried. He has now died, and the appellant, White, is his administrator, appointed in New York. The Texas decree of divorce made no disposition of the insurance policy, but White claims that by the law of that state, the decree of divorce extinguished the interest of Spence, and transferred all benefits under the policy to Slade. The law of New York gives no such effect to a decree of divorce, and the district judge, believing that that law controlled, awarded the proceeds to Spence. The law of Massachusetts is like that of New York.

White is certainly right that by the law of Texas upon her divorce a wife's interest as beneficiary in a policy insuring her husband's life passes to him, although the decree of divorce does not mention the policy. In Hatch v. Hatch, 35 Tex. Civ.App. 373, 80 S.W. 411, the husband had before his marriage taken out a policy, payable to his mother, but if he survived her, to his executors or administrators. He married the defendant, and shortly thereafter he and his mother conveyed to her all their interest in the policy, and she later paid several of the premiums. They were divorced, the decree making no disposition of the policy; whereupon he and his mother brought an action against the insurer, joining the defendant, in which they prayed that the policy be declared to be his. So the court held, though it gave the divorced wife a lien for the premiums she had paid. This result was thought to follow from the fact that in Texas a divorced wife has no insurable interest in her former husband's life. The second case was Whiteselle v. Northwestern Mutual Life Insurance Co., 221 S.W. 575, decided by the Commission of Appeals and approved by the Supreme Court of the state. The plaintiff, a divorced wife, sued the insurer upon a policy taken out by her former husband, who had made her the sole beneficiary without power of substitution. The premiums had been paid out of community property up to the time of their divorce, but although the decree allocated her separate property to the wife and divided the community property, it said nothing about the policy. The court dismissed the complaint, relying upon the doctrine of Hatch v. Hatch, supra.

The question before us is whether the law of conflict of laws of New York will treat as valid an involuntary transfer of the wife's chose in action, valid by the law of the place where both parties resided. There can be no doubt that if the transfer had been voluntary, i. e. by assignment, the courts of New York would follow the law of the place where the assignment took place. Olmsted v. Keyes, 85 N.Y. 593. In this respect insurance policies are no different from other choses in action. Miller v. Campbell, 140 N.Y. 457, 35 N.E. 651; Jackson v. Tallmadge, 216 App.Div. 100, 214 N.Y.S. 528. This is indeed the law generally. Farmers' L. & T. Co. v. Minnesota, 280 U.S. 204, 214, 50

S.Ct. 98, 74 L.Ed. 371, 65 A.L.R. 1000; Restatement of Conflict of Laws, § 350. We can see no reason to distinguish an involuntary transfer, when both parties are present within the state, where the transaction occurs; a fortiori, when they are both domiciled there. There is no magic in consent; the law of the place where an assignment takes place, assigns to it such consequences as it chooses: sometimes it will effectuate the parties' intent; sometimes it will frustrate it. Other states need not of course recognize the effect it gives, and they will not, if it is too offensive to their taste. But otherwise they do; among other reasons, because it avoids a shifting of rights with the forum. Similarly any state in which a non-consensual transaction occurs—a conviction of felony for example—may attach to it such consequences to the participants as it sees fit. And when the law of the state of the transaction makes it transfer property, we cannot see why other states should balk at recognizing the validity of that transfer as much as though the transaction had been an assignment. The involuntary transfer of chattels at any rate is so recognized. Green v. Van Buskirk, 7 Wall. 139, 19 L.Ed. 109; Hervey v. Rhode Island Locomotive Works, 93 U.S. 664, 23 L.Ed. 1003; Clark v. Williard, 292 U.S. 112, 54 S.Ct. 615, 78 L.Ed. 1160. (semble). The putative transferor must indeed be within the state, but that is implied in saying that he is a participant in the transaction. Nor can we see that the law of the place of performance has anything more to do with the question than when the transfer is by assignment. In both situations the law of the place of performance will indeed determine what is performance; that is, whether the obligor need perform to anyone but the original obligee. But when the obligor is indifferent to the identity of the obligee, so he be discharged, no question of performance arises, and the only relevant issue is as to the validity of the transfer as between the transferor and the transferee.

We have found no case in point, however. In McGrew v. Mutual Life Ins. Co., 132 Cal. 85, 64 P. 103, 84 Am.St.Rep. 20, it was held that a divorce in Hawaii did not transfer the wife's right as beneficiary, for she had become domiciled in California before the decree was entered. The implication seems to be that if her domicile had continued to be in Hawaii, the result would have been otherwise; but the decision does not so hold. Beale—Conflict of Laws § 346.4—says that "the law of the place of contracting governs in determining whether the right of a beneficiary * * * is lost by a divorce"; but the only authority cited is Pendleton v. Great Southern Life Ins. Co., 135 Okl. 40, 273 P. 1007, which is directly contra on the facts. The husband, who lived in Oklahoma with his wife, had insured his life for her benefit in an Oklahoma insurance company, all of whose risks were later assumed by a Texas company. He substituted his second wife as beneficiary; she divorced him and he died. By the law of Oklahoma this did not transfer the wife's interest, and the court held that Oklahoma law was to be applied. It reached this result because the policy was "an Oklahoma contract, and the same is thereby construed according to the laws of Oklahoma." If by this was meant that transfers of an interest in a policy are part of the "construction" of the contract and depend upon the law of the place of execution or of performance, it is certainly contrary to the general rule. Moreover, the obligation sued upon was that of the Texas insurer; so that if the law was as the court thought, the law of Texas should have governed. In any event the language was obiter, because the divorce was in Oklahoma and it was an Oklahoma court which was deciding its effect.

Finally, in the case at bar, this part of the law of Texas is not so repugnant to notions of justice prevalent in New York that we must reject it. There may indeed be little ground for the fear that a divorced wife will be tempted to make away with her former husband; but the belief that the beneficiary of life insurance should have an interest in the insured's continued life, is very ancient and still persists. There is not the slightest reason for saying that this application of it is contrary to the local mores, merely because by the law of New York divorce does not transfer the wife's interest.

Judgment reversed, cause remanded with instructions to enter judgment for White, as administrator.

CLARK, Circuit Judge (dissenting).

In this case we have a simple contract by an insurance company to pay money to a married woman on the happening of an event, namely, the death of her husband.

Husband and wife were residents of New York, while the insurance company was located in Massachusetts; whether the contract was made in Massachusetts or in New York is immaterial, since the law is the same in each state. The event has happened, and by the terms of the contract the money should be paid to the woman, now a resident of New York. It is so payable by the law of the place of contract, the place of performance, the forum. Salvin v. Salvin, 165 App.Div. 362, 151 N.Y.S. 60; Mutual. Life Ins. Co. v. Allen, 138 Mass. 24, 52 Am.Rep. 245; Connecticut Mutual Life Ins. Co. v. Schaefer, 94 U.S. 457, 24 L.Ed. 251. The promisor offers no objection. What is to prevent the carrying out of this contract as agreed?

The course which leads my brothers to an obstacle they consider insurmountable seems to me tortuous. In 1922, three years after making the contract, husband and wife moved to Texas; she returned to New York after her divorce in 1925; he remarried and stayed in Texas until he died in 1937. By the peculiar law of Texas—said in the anthologies, 52 A.L.R. 386–454 at pp. 397–399, 59 A.L.R. 172, to obtain only in Texas and Quebec— a divorced wife cannot recover insurance on her husband's life, because Texas insurance law requires a continuing insurable interest to maintain a beneficiary's rights in a policy. So my brothers find that an involuntary transfer of the wife's chose in action has taken place in Texas.

Now this idea of an involuntary transfer seems to me only a fiction, and not an apt fiction at that; though once it is uttered, the case is irrevocably decided. No one really made any transfer, nor is there any act which signifies it. The divorce decree did not; it did deal with community property, but no one seems to have thought of this policy in connection with the decree. And the cited case of Hatch v. Hatch, 35 Tex.Civ.App. 373, 80 S.W. 411, holds specifically that the divorce decree does not itself operate as a transfer and is not res judicata as to the policy, and hence the wife is entitled to a later adjudication returning to her the amount she has paid upon the policy. Indeed, an assignment by the husband to the wife of the cash surrender value of a policy in contemplation of divorce is valid. Shoemaker v. American Nat. Insurance Co., Tex.Com. App., 48 S.W.2d 612. The truth is that the peculiar Texas law is not one concerning divorce or property transfers, but is the law of insurance—a strange development of the ancient insurance doctrine of insurable interest.

The necessity of an insurable interest in contracts for insurance was originally developed as a way to save such contracts from judicial disapproval as wagering agreements. Vance, Insurance, 2d Ed., 118–123, 147–164. The idea survived with some moralistic twists in life insurance that otherwise a beneficiary might have an incentive to do away with his insured. But everywhere except in Texas and Quebec, it was held that there need be an insurable interest only at the initiation of the contract; the cessation of that interest does not render the policy invalid. Vance, op. cit. 149–151, 596–597, and cases cited above. The opposite rule applied in Texas is stated in the leading case of Cheeves v. Anders, 87 Tex. 287, 28 S.W. 274, 47 Am. St.Rep. 107, which was not a divorce case at all, but was a case where the assured assigned the policy to his partner at the time the partnership was dissolved. The decisions are based directly on the moralistic rationalization that the other rule would afford inducement to destroy human life. Cheeves v. Anders, supra; Northwestern Mutual Life Ins. Co. v. Whiteselle, Tex.Civ.App., 188 S.W. 22, Id., Tex. Com.App., 221 S.W. 575, cited in the opinion.

Hence here is not the case of an assignment, voluntary or involuntary. It is merely the case of not being able to make proof in the Texas courts that one comes within the terms of Texas insurance contracts as construed by their courts. A divorced wife cannot do so; neither can a former partner. The same rule would apply to other relationships, such as a former creditor with the former debtor. Goldbaum v. Blum, 79 Tex. 638, 15 S.W. 564. One must assume that a like result would follow if one took out insurance in favor of his fiancée and later the engagement was broken. Taylor v. Travellers' Ins. Co., 15 Tex.Civ.App. 254, 39 S.W. 185. The fact that the proceeds are paid to the insured's estate does not mean that they go there by transfer. As in the somewhat analogous case of the beneficiary who forfeits his rights by murdering the insured, it is foolish to allow the insurance company to profit by this, to it, fortuitous circumstance. So a resulting trust in favor of the insured's estate is recognized to take

this windfall from the insurer to the remaining most likely candidate for it. Vance, Insurance, 598–603. Cf. Cheeves v. Anders, supra; Mayher v. Manhattan Life Ins. Co., 87 Tex. 169, 27 S.W. 124.

In fact, the question really turns upon contract law. The policy ordinarily covers the matter of change of beneficiary; here, indeed, no power to change the beneficiary was reserved. Texas desires to override that contractual provision for reasons of her public policy. She can do so if she has power to determine the meaning and validity of the contract But it is well settled law that the place of contracting governs the terms of an insurance contract—unless, indeed, there is something in the agreement which so definitely outrages the law of the place of performance that the latter would refuse to enforce it. Mutual Life Ins. Co. of New York v. Johnson, 293 U.S. 335, 55 S.Ct. 154, 79 L.Ed. 398; Peoples Life Ins. Co. v. Whiteside, 5 Cir., 94 F.2d 409, certiorari denied, 304 U.S. 567, 58 S.Ct. 949, 82 L.Ed. 1533; Vance, Insurance, 238; Restatement of Conflict of Laws, § 348; cases collected in 52 L.R.A.,N.S., 275–286; 23 L.R.A.,N.S., 968–982; and 63 L.R.A. 833–869. Hence the statement of Professor Beale in his Conflict of Laws, § 346.4 (quoted in Judge Hand's opinion as contrary to the result there reached), is quite justified, as is the supporting decision in Pendleton v. Great Southern Life Ins. Co., 135 Okl. 40, 273 P. 1007. Indeed, I believe it is a real question whether Texas would go so far as to apply this rule of public policy against a suitor in its courts on a non-Texas contract. All of the cases cited to us dealt with Texas contracts. Ordinarily Texas, too, applies the law of the place of contract. Seiders v. Merchants' Life Ass'n, 93 Tex. 194, 54 S.W. 753; Fidelity Mutual Life Ins. Co. v. Harris, 94 Tex. 25, 57 S.W. 635, 86 Am. St.Rep. 813; Cowen v. Equitable Life Assur. Soc., 37 Tex.Civ.App. 430, 84 S.W. 404; cf. Manhattan Life Ins. Co. v. Cohen, Tex.Civ.App., 139 S.W. 51. But where neither the place of performance nor the place of suit is in Texas, I can see no reason at all for not allowing the place of contract to govern. All the more should that be the case when otherwise a perfectly normal contract will be set aside.

It is true that the situation here somewhat suggests the analogy of a transfer because by the Texas rule rights end in one party and begin in another; but it is awkward and not significant to apply the term thus generally, as though we were to say that a public official defeated for reëlection transfers his official rights to his successor. Once we get away from a consensual transaction, there is no need of giving extraterritorial effect to this peculiar local doctrine. Even as to voluntary transfers, not all these may be wholly subject to the local law of their situs. While, as the opinion point out, details as to the making of a voluntary assignment—capacity of the parties, form, whether the assignor has an assignable right, and so on—are, like other contracts, subject to the law of the place of contract (Restatement of Conflicts, §§ 348 and 350 with Comment), yet restrictions on an assignment made by an earlier prior contract would surely govern except as against an overriding public policy. Here, since the insured had not reserved power to change the beneficiary, the original contract in that respect should control in determining whether even a voluntary assignment is operative, unless the place of performance has a strong policy to the contrary. The chance happening that the parties were for a time in another jurisdiction with a peculiar rule cannot affect this question of contract law. See Boseman v. Connecticut General Life Ins. Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036, 110 A.L.R. 732.

What are the limits of the rule here announced by my brothers? The existence of a divorce decree is not determinative, for the Texas law is not limited to this situation alone. Indeed, the rule logically must extend to all persons lacking insurable interest who have the right to sue in Texas courts on insurance contracts. A New York divorcée, paid-up creditor, former partner, or former fiancée, going into Texas, may find her or his rights under existing insurance policies jeopardized not merely in Texas, but thereafter in all other states. And if this seems absurd, is there any other stopping point, once we start on the rule?

Of course, the law must grow by fictions, by applying analogies persuasive to us, however remote, to concrete cases. I do not question the process, but think we must always decide whether the destination is the one we wish to reach. Here we come out with an admittedly antiquated, but heretofore local, doctrine of insurance law now given a wide and uncertain area of operation. And we have reached this

end at the expense of a woman who received, not alimony, but the burden of a minor child, and to the advantage of the husband's estate—or undoubtedly, ultimately to that of the second wife. One may conclude, too, that the first wife helped to keep the policy alive during her marriage, while the second one had no interest or expectation in it, for it lapsed soon after the divorce, and this suit concerns only the proceeds. The concept of an involuntary transfer when none was actually contemplated or had should not be employed to such an end. The judgment below should be affirmed.