451 F.2d 1292
 The TRAVELERS INSURANCE COMPANY, a Connecticut Corporation,
Plaintiff-Appellee,
v.
Barbara G. FIELDS, Individually and as Administratrix of the
Estate of Jan A. Fields, Deceased, Defendant-Appellee,
and
Phyllis N. Fields, Individually and as Guardian, and Janet
Marie Fields, Lori Allison Fields, and Jan Scott
Fields, minors, Defendants-Appellants,
and
Charles Paul Wagner, Administrator of the Estate of Jan A.
Fields, Deceased, Defendant-Appellee.
 No. 71-1164.
 United States Court of Appeals,
Sixth Circuit.
 Dec. 13, 1971.
 
 Leo J. Breslin, Cincinnati, Ohio, for defendants-appellants; John J. O'Hara, Arnold Taylor, for O'Hara, Ruberg & Cetrulo, Covington, Ky., Lindhorst & Dreidame, Cincinnati, Ohio, on brief.
 John A. Lloyd, Jr., Cincinnati, Ohio, for appellees; William B. O'Neal, Cincinnati, Ohio, for plaintiff-appellee on brief; John A. West, Cincinnati, Ohio, Stanley Chrisman, Covington, Ky., for defendant-appellee on brief.
 Before WEICK, McCREE and KENT, Circuit Judges.
 McCREE, Circuit Judge.
 
 
 1
 This is an interpleader action brought pursuant to 28 U.S.C. Sec. 1335 by the Travelers Insurance Company (Travelers) in the United States District Court for the Eastern District of Kentucky. Named as defendants were Barbara G. Fields, widow of the insured and administratrix of his Ohio estate, and Phyllis N. Fields, his first wife and guardian of their children. This appeal has been taken by Phyllis Fields from a judgment in favor of Barbara. We affirm.
 
 
 2
 Jan A. Fields, a citizen of Kentucky, was employed by the Mead Corporation at a plant in Ohio. In May 1960 and December 1964, Travelers issued group insurance policies to Mead, insuring Mead's employees against accidental death. Both policies contained the following provision:
 
 
 3
 This policy is issued and delivered in the State of Ohio and shall be governed by the laws of that state.
 
 
 4
 Jan became insured under these policies in the amount of $103,000. He designated Phyllis, his wife at that time, beneficiary on both policies.
 
 
 5
 Subsequently Phyllis instituted an action for divorce in the Kenton County Circuit Court in Kentucky. Both Phyllis and Jan were citizens of Kentucky and both appeared personally in the action. On September 27, 1966, a divorce decree was entered. As required by K.R.S. Sec. 403.065 (1962), the decree contained a restoration-of-property provision, adjudging that
 
 
 6
 each party shall restore to the other such property not disposed of at the commencement of this action as either may have obtained directly or indirectly from or through the other during said marriage in consideration or by reason thereof.[1]
 
 
 7
 The property settlement agreement negotiated by the parties was silent concerning the proceeds of the Travelers policies.
 
 
 8
 Thereafter, on June 6, 1967, Jan married Barbara Fields. On September 9, 1969, without having changed the designation of Phyllis as beneficiary, Jan died in an airplane crash. Both Phyllis and Barbara, the latter in her capacity as administratrix of Jan's Ohio estate (he was a citizen of Ohio at his death), claimed the proceeds of the policies.
 
 
 9
 The court below, 323 F.Supp. 387, (E.D.Ky.1970) granted summary judgment in favor of Barbara. Judge Swinford held that, since the Kentucky courts have consistently construed the state's restoration-of-property statute to abrogate the interest of a divorced spouse named as beneficiary even if the designation is not altered on the policy, Phyllis' rights under the Travelers policies were extinguished by the 1966 divorce decree. This decree, Judge Swinford wrote, would be given full faith and credit by Ohio courts "both as to its dissolution of the marriage, and as to its resolution of property rights." Thus,
 
 
 10
 an Ohio court would be impelled to recognize the restoration of property order, which by construction of the laws of the state wherein the divorce was granted, explicitly extinguished [Phyllis'] rights as a beneficiary.
 
 
 11
 He added that, even if the case were to be characterized as a "matter of Ohio contract law," which was Phyllis' contention, "Ohio contract law cannot restore to [Phyllis] those rights which she as a part of her divorce surrendered."On appeal, Phyllis contends that the court erred in its determination that her status as beneficiary was extinguished by the Kentucky divorce decree. She argues that this result violates her rights under the due process clause of the Fourteenth Amendment and offends the dictates of the full faith and credit clause. We consider these contentions in this order.
 
 
 12
 The Kentucky courts have consistently held since 1913 that the restoration-of-property order in a Kentucky divorce decree extinguishes the divorced wife's rights[2] as a beneficiary of a life insurance policy on her husband's life despite the failure of the husband to change her designation as such following the divorce.[3] Bissell v. Gentry, 403 S.W.2d 15 (Ky.1966); Salisbury v. Bick, 368 S.W.2d 317 (Ky.1963); Warren v. Spurlock's Administrator, 292 Ky. 668, 167 S.W.2d 858 (1943); Schauberger v. Morel's Administrator, 168 Ky. 368, 182 S.W. 198 (1916); Sea v. Conrad, 155 Ky. 51, 159 S.W. 622 (1913). The Bissell case, supra, applied this rule to the divorced wife's rights in a group insurance policy issued, as here, to her husband's employer.
 
 
 13
 Appellant does not dispute this statement of Kentucky law. Her contention is that Kentucky law does not apply in this case because of both the provision in the insurance contract between Travelers and Mead that the contract shall be governed by the law of Ohio and the significant Ohio contacts involved in the issuance and maintenance of the contract. In Ohio, a divorce does not extinguish the rights of the wife named as beneficiary. There, the named beneficiary still recovers the proceeds because the designation "wife" is regarded as merely descriptive. See, e. g., Cannon v. Hamilton, 174 Ohio St. 268, 189 N.E.2d 152 (1963).
 
 
 14
 In support of her contention that Kentucky law does not govern the case at bar, appellant relies principally upon the recent decision of Judge Moynahan of the Eastern District of Kentucky in Morgan v. United States, 315 F.Supp. 213 (E.D.Ky.1969). In that case, the dispute concerned the proceeds of a National Service Life Insurance policy. These policies are issued to veterans of United States military service pursuant to 38 U.S.C. Sec. 701 et seq. Since the Supreme Court has previously construed this Act as requiring that the insurance proceeds go to the named beneficiary, in the context of a dispute between a serviceman's wife in a community property state and the named beneficiaries, Wissner v. Wissner, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950), the issue presented in Morgan was whether that federal rule took precedence over the Kentucky restoration-of-property doctrine. Judge Moynahan held that the matter was "one involving the primacy of federal law," and awarded the proceeds to the divorced wife named as beneficiary. 315 F.Supp. at 215.
 
 
 15
 Appellant apparently argues that the Morgan decision is based upon principles of comity rather than the supremacy of federal law, and that those same principles would mandate Kentucky's deference in the instant context to Ohio law. We disagree.
 
 
 16
 In Wissner, supra, the widow of a serviceman claimed one-half the proceeds of a National Service Life Insurance policy, although she had not been named beneficiary, on the ground that the state of her domicile was a community property state, under whose law she was entitled to one-half ownership of the policy. The Court reversed the state court's determination that state law took precedence, and held that the congressional purpose in enacting this insurance program would be frustrated if the policy proceeds were not paid to the named beneficiaries. The Court stated:
 
 
 17
 The National Service Life Insurance Act is the congressional mode of affording a uniform and comprehensive system of life insurance for members and veterans of the armed forces of the United States. A liberal policy toward the serviceman and his named beneficiary is everywhere evident in the comprehensive statutory plan. Premiums are very low and are waived during the insured's disability; costs of administration are borne by the United States; liabilities may be discharged out of congressional appropriations.
 
 
 18
 The controlling section of the Act provides that the insured "shall have the right to designate the beneficiary or beneficiaries of the insurance [within a designated class], . . . and shall . . . at all times have the right to change the beneficiary or beneficiaries. . . ." 38 U.S.C. Sec. [717(a)]. Thus Congress has spoken with force and clarity in directing that the proceeds belong to the named beneficiary and no other. Pursuant to the congressional command, the Government contracted to pay the insurance to the insured's choice. He chose his mother. It is plain to us that the judgment of the lower court, as to one-half of the proceeds, substitutes the widow for the mother, who was the beneficiary Congress directed shall receive the insurance money. We do not share appellee's discovery of congressional purpose that widows in community property states participate in the payments under the policy, contrary to the express direction of the insured. Whether directed at the very money received from the Government or an equivalent amount, the judgment below nullifies the soldier's choice and frustrates the deliberate purpose of Congress. It cannot stand.
 
 
 19
 338 U.S. at 658-659, 70 S.Ct. at 399-400 (emphasis added). In Legatie v. United States, 40 F.R.D. 114, 117 (E.D.N.Y.1966), relied upon by Judge Moynahan in Morgan, the court held that National Service Life Insurance policies are "contracts with the United States," their terms "governed by federal statutes and regulations in determining who is to share in the benefits arising therefrom."
 
 
 20
 These cases merely involve particular applications of the familiar principle that, where the purpose of a federal law requires subordination of state policy, the supremacy clause proscribes application of the state law embodying that policy. See, e.g., Free v. Bland, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962); Franklin National Bank v. New York, 347 U.S. 373, 74 S.Ct. 550, 98 L.Ed. 767 (1954). Cf. Clearfield Trust Company v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943). There is, of course, no supremacy clause to mandate the primacy of the policy of one state over that of another state, and it follows that Kentucky is not required to deny application of its law affecting property involved in a divorce in favor of that of Ohio. This is so regardless of the provision in the contracts that they "shall be governed by the laws of [Ohio]." Although that provision might require Kentucky courts to apply Ohio law in the resolution of any dispute about the operation of the insurance contract terms[4] even if that application violated Kentucky public policy or contradicted Kentucky law, see, e.g., Union Central Life Insurance Company v. Barnes, 175 Ky. 364, 194 S.W. 339 (1917); Clarey v. Union Central Life Insurance Company, 143 Ky. 540, 136 S.W. 1014 (1911); but see Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L.Ed. 1481 (1941); Dial v. Fisk, 197 S.W.2d 598 (Tex.Civ.App.1946), nevertheless, ordinary principles of conflicts of law should apply to determine what effect the restoration-of-property provision had on the designation of beneficiary. We believe the Kentucky courts would apply Kentucky law and hold that it extinguished appellant's expectancy, and we hold that the district court correctly followed that law and found that there was an involuntary divestiture.
 
 
 21
 Support for this view is found in the opinion of Judge Learned Hand in New England Mutual Life Insurance Co. v. Spence, 104 F.2d 665 (2d Cir. 1939). In that case, the insured, a citizen of New York, named his wife beneficiary of a life insurance policy that was issued and payable in Massachusetts. The couple then moved to Texas, where, upon petition of the insured, they were later divorced. The divorce decree did not mention the policy proceeds. Under New York and Massachusetts law, the decree would not have extinguished the rights of the named beneficiary. In Texas, however, a divorce passed the wife's interest in the policy to her husband since she was deemed no longer to have an insurable interest in his life. The question thus presented was whether New York courts would apply New York (or Massachusetts) law or Texas law in determining the rights of the divorced wife. Or, as Judge Hand phrased the issue, "whether the law of conflict of laws of New York will treat as valid an involuntary transfer of the wife's chose in action, valid by the law of the place where both parties resided." 104 F.2d at 666.
 
 
 22
 The court held that Texas law controlled, stating:
 
 
 23
 There can be no doubt that if the transfer had been voluntary, i. e. by assignment, the courts of New York would follow the law of the place where the assignment took place. Olmsted v. Keyes, 85 N.Y. 593. In this respect insurance policies are no different from other choses in action. Miller v. Campbell, 140 N.Y. 457, 35 N.E. 651; Jackson v. Tallmadge, 216 App.Div. 100, 214 N.Y.S. 528. This is indeed the law generally, Farmers' L. & T. Co. v. Minnesota, 280 U.S. 204, 214, 50 S.Ct. 98, 74 L.Ed. 371, 65 A.L.R. 1000; Restatement of Conflict of Laws, Sec. 350. We can see no reason to distinguish an involuntary transfer, when both parties are present within the state, where the transaction occurs; a fortiori, when they are both domiciled there. There is no magic in consent; the law of the place where an assignment takes place, assigns to it such consequences as it chooses: sometimes it will effectuate the parties' intent; sometimes it will frustrate it. Other states need not of course recognize the effect it gives, and they will not, if it is too offensive to their taste. But otherwise they do; among other reasons, because it avoids a shifting of rights with the forum. Similarly any state in which a nonconsensual transaction occurs-a conviction of felony for example-may attach to it such consequences to the participants as it sees fit. And when the law of the state of the transaction makes it transfer property, we cannot see why other states should balk at recognizing the validity of that transfer as much as though the transaction had been an assignment. The involuntary transfer of chattels at any rate is so recognized. Green v. Van Buskirk, 7 Wall. 139, [70 U.S. 448] 19 L.Ed. 109; Hervey v. Rhode Island Locomotive Works, 93 U.S. 664, 23 L.Ed. 1003; Clark v. Williard, 292 U.S. 112, 54 S.Ct. 615, 78 L.Ed. 1160. (semble). The putative transferor must indeed be within the state, but that is implied in saying that he is a participant in the transaction. Nor can we see that the law of the place of performance has anything more to do with the question than when the transfer is by assignment. In both situations the law of the place of performance will indeed determine what is performance; that is, whether the obligor need perform to anyone but the original obligee. But when the obligor is indifferent to the identity of the obligee, so he be discharged, no question of performance arises, and the only relevant issue is as to the validity of the transfer as between the transferor and the transferee.
 
 
 24
 104 F.2d at 666-667.
 
 
 25
 If anything, the instant facts constitute a more appropriate situation than does Spence for application of the fiction of involuntary assignment, as shown by the dissent of Judge Clark in that case. He conceded that phrasing the issue in terms of involuntary transfer mandated the majority's result. It was his contention, however, that no transfer had occurred. The divorce decree did not refer to the policy proceeds, and under Texas law the decree did not in and of itself operate to effect a transfer. The Texas rule of insurable interest, according to Judge Clark, pertained only to proof that under Texas insurance law, the named beneficiary qualified as a beneficiary on a Texas insurance contract. Since the contract in Spence was not a Texas contract, whether the beneficiary properly qualified as such depended on the law of the place of contracting. Thus, Judge Clark felt that Texas courts would not apply Texas insurance law to a New York or Massachusetts policy in the absence, at least, of a Texas statute or a provision in the divorce decree requiring that the divorced wife surrender the rights she may have under the insurance laws of another state. 104 F.2d at 668-669.[5] Here, no question exists, in the light of Kentucky cases construing K.R.S. Sec. 403.060(2), whether a transfer occurred, which was the element Judge Clark found to be missing in Spence. Since the general rule is that an assignment of rights under a life insurance policy is governed by the law of the place where the assignment was made, see Anno., 97 A.L.R.2d 1399, 1401 (1964),[6] a transfer in Kentucky from appellant to Jan Fields is governed by Kentucky law.
 
 
 26
 Appellant also argues that a holding that the Kentucky statute operated to extinguish her expectancy as named beneficiary violates her constitutional right to due process of law. She places her principal reliance on Home Insurance Company v. Dick, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926 (1930), and Hartford Accident & Indemnity Company v. Delta & Pine Land Company, 292 U.S. 143, 54 S.Ct. 634, 78 L.Ed. 1178 (1934).
 
 
 27
 In Dick, a Texas citizen sued a Mexican insurance company in Texas to recover on a fire insurance policy insuring a boat in Mexican waters. Jurisdiction was acquired in Texas by garnishment of insurance companies doing business in Texas that had reinsured, by contract with the Mexican company, part of the risk it had assumed. The garnishees denied the existence of a res within Texas, asserting that the plaintiff had not complied with a provision in the insurance policy requiring suit to be brought within one year from the date of loss. This provision was held inapplicable by the Texas courts because of a Texas statute invalidating such limitations. The Supreme Court reversed, holding that the application of the Texas statute to this Mexican insurance policy violated the due process clause of the Fourteenth Amendment.
 
 
 28
 Delta & Pine involved a suit in Mississippi on a policy issued in and governed by the laws of Tennessee. The Mississippi courts refused to give effect to a policy provision limiting the insurer's liability to suits brought within a specified time. This holding was based on a Mississippi statute invalidating such limitation clauses, which was held applicable to the contract under a Mississippi statute deeming insurance contracts on interests in the state to have been made in the state. The contract was an indemnity bond covering an employee of plaintiff at its Mississippi office. The Supreme Court reversed, as in Dick, on the ground that the Mississippi statutes, as construed, violated defendant's due process rights.
 
 
 29
 These cases are inapposite here because Kentucky's contacts are more than sufficient to permit application of her statutes. The Court stressed in Dick that nothing relating to the policy was done in Texas and that Texas laws and courts were invoked only for the bringing of suit. In these circumstances, Texas was
 
 
 30
 without power to affect the terms of contracts so made. Its attempt to impose a greater obligation than that agreed upon and to seize property in payment of the imposed obligation violates the guaranty against deprivation of property without due process of law. . . . [Texas] may not abrogate the rights of parties beyond its borders having no relation to anything done or to be done within them.
 
 
 31
 281 U.S. at 408, 410, 50 S.Ct. at 341, 342 (emphasis added.) Similarly, in Delta & Pine the Court held that a state "cannot extend the effect of its laws beyond its borders so as to destroy or impair the right of citizens of other states to make a contract not operative within its jurisdiction, and lawful where made." 292 U.S. at 149. Both cases turned on the alteration by the forum state of contractural obligations undertaken outside that state.
 
 
 32
 In the instant case, Travelers does not complain that the Kentucky restoration-of-property statute deprived it of property without due process of law, as did the insurance companies in Dick and in Delta & Pine, because neither its property rights nor its contractual rights and obligations were affected: its liability was clear, a liability that it recognized by instituting this interpleader action and paying the proceeds into court for proper disposition. Appellant, on the other hand, possessed a chose in action that was extinguished. Whether this extinction violated her due process rights depends, in turn, on the nexus between the forum and the interest asserted. Dick, supra. Whatever may have been the nature under Ohio law of appellant's interest in the Travelers policies, the state of Kentucky had the power, because of its jurisdiction over appellant, to assert jurisdiction over that interest. See Texas v. New Jersey, 379 U.S. 674, 85 S.Ct. 626, 13 L.Ed.2d 596 (1965); Farmers Loan & Trust Company v. Minnesota, 280 U.S. 204, 50 S.Ct. 98, 74 L.Ed. 371 (1930); Blodgett v. Silberman, 277 U.S. 1, 48 S.Ct. 410, 72 L.Ed. 749 (1928); Restatement (Second) of Conflict of Laws Sec. 65 (1971). This is not a case of a state attempting, as in Delta & Pine, supra, "to draw to [itself] control over the obligations of contracts elsewhere validly consummated and to convert them for all purposes into [its] contracts . . . regardless of the relative importance of [its] interests . . . as contrasted with those created at the place of the contract . . ." 292 U.S. at 150, 54 S.Ct. at 636. Kentucky has no interest in defining and construing the contractual obligations; it does, however, have a strong interest in ascertaining and dividing whatever property is possessed by its citizens who are properly before its courts in a divorce action. The Fourteenth Amendment does not require that the state, in adjudicating the division of this property, ignore its own laws and look to the law of each state in which rights to the property originated to determine the effect of the divorce upon those rights.
 
 
 33
 We find no merit in appellant's contention that this result offends the full faith and credit clause, U.S.Const. art. IV, Sec. 1.
 
 
 34
 Finally, this result is by no means inevitable whenever a couple in these circumstances is divorced in Kentucky. Jan Fields could very easily have avoided the effect of the Kentucky restoration-of-property law, which he is presumed to have known, by providing in the property settlement that appellant was to have the proceeds of the Travelers policies or by redesignating her after the decree. By neglecting to do so, he presumably desired the result mandated by the Kentucky statute.
 
 
 35
 The judgment of the District Court is affirmed.
 
 
 
 [1]
 K.R.S. Sec. 403.060(2) provides:
 (2) Upon final judgment of divorce from the bonds of matrimony, each party shall be restored all the property, not disposed of at the beginning of the action, that he or she obtained from or through the other before or during the marriage and in consideration of the marriage.
 This vesting statute is implemented by inclusion of its terms in all divorce decrees rendered in the state, as required by K.R.S. Sec. 403.065:
 Every judgment for a divorce from the bond of matrimony shall contain an order restoring any property not disposed of at the commencement of the action, which either party may have obtained, directly or indirectly, from or through the other, during marriage, in consideration or by reason thereof; and any property so obtained, without valuable consideration, shall be deemed to have been obtained by reason of marriage. The proceedings to enforce this order may be by petition of either party, specifying the property which the other has failed to restore; and the court may hear and determine the same in a summary manner, after ten days' notice to the party so failing.
 
 
 [2]
 When the insured reserves the right to change the beneficiary on the policy, as here, under the law of Kentucky and of Ohio the beneficiary's "right" in the policy is not vested but is merely an "expectancy." See McKenty v. Caldwell, 287 Ky. 750, 155 S.W.2d 193 (1941); Stone v. Stephens, 155 Ohio St. 595, 99 N.E.2d 766 (1951)
 
 
 [3]
 There are two exceptions to this rule, neither of which applies in this case. If the divorced wife paid the policy premiums from her separate funds after the divorce, she may recover the amount she paid from the policy proceeds. Salisbury v. Vick, 368 S.W.2d 317 (Ky.1963). If she paid all the premiums, she may recover all the proceeds. Johnson v. Johnson's Administratrix, 297 S.W.2d 753 (Ky.1956)
 
 
 [4]
 This choice-of-law provision in the contracts most likely would be given effect by a Kentucky court. See Restatement (Second) of Conflict of Laws Sec. 192, comment h (1971). Moreover, the policies were accepted and administered in Ohio, and the policy premiums were paid in Ohio by the employer. In these circumstances, the relationship between Travelers and Mead, as well as that between Travelers and Jan Fields, is governed by Ohio law. See Boseman v. Connecticut General Life Insurance Co., 301 U.S. 196, 57 S.Ct. 686, 81 L.Ed. 1036 (1937); Equitable Life Assurance Society of the United States v. Aaron, 108 F.2d 777 (6th Cir. 1940); Continental Assurance Co. v. Henson, 297 Ky. 764, 181 S.W.2d 431 (1944)
 
 
 [5]
 Texas courts subsequently did apply this Texas doctrine to insurance contracts made in and governed by the laws of other states, on the ground that it was against the public policy of the state for its courts to award policy proceeds to a beneficiary without an insurable interest. Dial v. Fisk, 197 S.W.2d 598 (Tex.Civ.App.1946); Cole v. Browning, 187 S.W.2d 588 (Tex.Civ.App.1945)
 
 
 [6]
 On the question of assignment of contract rights, the recently revised Restatement (Second) of Conflict of Laws Sec. 209 (1971) states the rule more broadly:
 The validity of an assignment of a contractual right not embodied in a document, which is assignable under the rule of Sec. 208, and the rights created thereby as between the assignor and the assignee are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the assignment and the parties.
 This provision does not, however, undercut the rule stated in the text concerning the assignment of rights under an insurance policy, as is illustrated by comment c of Sec. 209:
 When the acts of assignment on the part of both assignor and assignee are done in the same state, this state will usually be the state of most significant relationship, except when the place of assignment bears no normal relation to the transaction.